opinion

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

EL PASO NATURAL GAS COMPANY,

    Plaintiff,

vs.

DUCTOS DE NOGALES, L.L.C., et al.,

    Defendants.

No. CIV 05-486-TUC-CKJ

**ORDER**

On April 13, 2007, this Court directed Plaintiff El Paso Natural Gas Company ("El Paso") to submit a renewed motion for default judgment against Ductos de Nogales, L.L.C., ("Ductos") a motion to dismiss as to Ductos, or some alternate statement regarding the status of the proceedings against Ductos, on or before April 30, 2007. El Paso did not comply with the Court's Order. On May 10, 2007, this Court ordered El Paso to show cause why Ductos should not be dismissed with prejudice from this matter by filing a writing with this Court on or before May 21, 2007. On May 21, 2007, El Paso filed a Brief Regarding Ductos de Nogales, L.L.C., [Doc. # 81] and a Renewed Motion for Default Judgment [Doc. # 82].

*Order to Show Cause*

The Court finds dismissal is not appropriate.

*Factual and Procedural Background*

El Paso and Ductos entered into a Construction Facilities Agreement ("Agreement") on November 22, 1999, for the construction, operation, and installation of a meter station and a natural gas lateral line located in Santa Cruz County, Arizona. On December 17, 2001, Dwight H. Cumming ("Cumming") executed a Guaranty in favor of El Paso, guarantying the punctual payment when due of any and all indebtedness, liabilities, and obligations of any kind relating to all agreements entered into between El Paso and Ductos and Cumming Gas Transmission, LLC ("Cumming Gas"). On December 28, 2001, El Paso entered into a Letter Amendment with Ductos and Cumming Gas to add Cumming Gas as a co-party to the November 22, 1999, Agreement.

On September 24, 2002, El Paso completed the construction of the facilities. On February 26, 2003, El Paso mailed an invoice to Ductos in the amount of $1,578,684.41 for the cost of completion of the constructed facilities.

On August 3, 2005, El Paso filed suit against Defendants for breach of contract and breach of guaranty asserting that Defendants have failed to pay El Paso for the expenses El Paso incurred in its performance of the Agreement between El Paso, Ductos, and Cumming Gas.

El Paso, Cumming and Cumming Gas have submitted a Stipulation for Entry of Judgment.

The Complaint was served on Ductos on August 18, 2005. After Ductos failed to respond, El Paso asked for entry of default. The Clerk of the Court entered default on November 22, 2005, and El Paso has now filed a renewed motion for a default judgment.

*Adequacy of Service of Process*

As a preliminary matter, the Court addresses the adequacy of the service of process on Ductos. *See e.g., Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1345 (5th Cir. 1992) (Where default "is based on a void judgment under rule 60(b)(4), the district court has no discretion-the judgment is either void or it is not. If a court lacks jurisdiction ...

1  because of insufficient service of process, the judgment is void and the district court must set
2  it aside.); *Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851-52 (9th Cir. 1992) (finding that
3  where a plaintiff "failed to serve [defendant] properly ... the default judgments [wa]s void").

Based on the Motion for Entry of Default [Doc. # 14], including Exhibit A, it appears that the Complaint was properly served on Ductos. The complaint was served on Cyndy Woodgate of CSC Services, Inc, in Carson City, Nevada. CSC Services, Inc., is a resident agent for Ductos as recorded by the Nevada Secretary of State[1]. See Fed.R.Civ.P. 4(h) (discussing service of process on a corporation, which includes service pursuant to the law of the state in which the district court is located or service effected); Ca.Civ.Pro. § 416.10 (service upon corporations). Therefore, with the Complaint being properly served to the authorized agent of Ductos, El Paso satisfied the service requirements necessary to obtain a default judgment.

*Default Judgment and Eitel Factors*

Because service appears to have been proper, the Court now addresses the merits of El Paso's renewed motion for default judgment. After entry of a default, a court may grant a default judgment on the merits of the case. *See* Fed.R.Civ.P. 55. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980). Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As default has already been entered in this case, the Court must take as true all factual allegations in El Paso's Complaint

---

[1] The resident agent information was obtained from the website of the Nevada Secretary of State.

except for those related to the amount of damages. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (internal quotation marks omitted); *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007 (9th Cir. 2002).

*Possibility of Prejudice to Plaintiffs*

The Court first considers whether the plaintiff will suffer prejudice if default judgment is not entered. *Eitel*. Based on the documents submitted by El Paso, it appears that Ductos does not contest the fact that it owes El Paso at least $1,028,684.41, and, since 30 days after February 26, 2003, when El Paso mailed the invoice to Ductos, this sum has been due without even a partial payment by Ductos. The Court concludes that El Paso would suffer prejudice if its motion for default judgment were denied because it would be "without other recourse for recovery." *Pepsico, Inc. v. California Security Cans*, 238 F.Supp.2d 1172, 1177 (C.D.Cal. 2002).

*Merits of Plaintiff's Substantive Claim and Sufficiency of the Complaint*

The Court also considers that *Eitel* "require[s] that a plaintiff state a claim on which the [plaintiff] may recover." *Philip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494, 499 (C.D.Cal.2003) (internal quotation marks omitted). In the instant case, El Paso's claim for relief must be based on Texas law because the Agreement specifically provides that the "AGREEMENT SHALL BE INTERPRETED UNDER THE LAWS OF THE STATE OF TEXAS[.]" Complaint, Ex. 1, ¶ 14.

El Paso has sufficiently stated a valid claim for a breach of the Agreement under Texas contract law. To establish a prima facie case for breach of contract, El Paso must show " (1) the existence of a valid contract between plaintiff and defendant, (2) the plaintiff's performance or tender of performance, (3) the defendant's breach of the contract, and (4) the plaintiff's damage as a result of the breach." *Talley Construction Company v. Rodriguez*,

1  2006 WL 23405 *3 (Tex.App.-Houston 2006), *citing Prime Prods., Inc. v. S.S.I. Plastics,*
2  *Inc.*, 97 S.W.3d 631, 636 (Tex.App.-Houston [1st Dist.] 2002, pet. denied). In its Complaint,
3  El Paso alleges that El Paso and Ductos entered into an Agreement for the construction,
4  operation and installation of a meter station and a natural gas lateral line and, on September
5  24, 2002, El Paso completed the construction of the facilities. El Paso further alleges that
6  the Agreement provided that Ductos agreed to "reimburse El Paso within 30 days after
7  presentation of El Paso's invoice for the costs incurred to purchase and install the facilities
8  . . . and for all other construction costs incurred by El Paso." Complaint, Ex. 1, ¶ 3. El Paso
9  further alleges that, on February 26, 2003, El Paso mailed Ductos an invoice in the amount
10 of $1,578,684.41 and that Ductos has failed to pay El Paso for the expenses incurred by El
11 Paso in its performance of the Agreement. Further, El Paso alleges that it has made all
12 reasonable efforts to mitigate damages (in the amount of $550,000). Given these allegations
13 and the Court's acceptance of these allegations as true, the Court finds that El Paso has
14 adequately shown a breach of the Agreement.

*Sum of Money at Stake in Action*

For the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico*, 238 F.Supp.2d at 1176. If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored. In this case, the main damage award sought by El Paso is the payment of $1,578,684.41, minus the $550,000 mitigation, for the completion of the constructed facilities. The requested amount is supported by an itemized statement of costs. Motion for Default Judgment, Ex. B. This detailed damage request is specifically related to the completion of the facilities as set forth in the Agreement and is specifically related to the breach by Ductos. The Court finds that the amount of money at stake is not completely disproportionate or inappropriate considering the defendant's actions.

1  *Possibility of Dispute Concerning Material Facts*

2      The Court also considers the possibility of dispute as to any material facts in the case.
3  Here, there is little possibility of dispute concerning material facts because (1) based on the
4  entry of default, the Court accepts all allegations in El Paso's complaint as true (except for
5  those relating to damages) and (2) Ductos has not made any attempt to challenge El Paso's
6  Complaint or even appear in this case.  Moreover, the Agreement states that any "cost
7  estimate by El Paso is solely a good faith estimate and in no way limits [Ductos'] obligation
8  to reimburse El Paso for all costs associated with the subject project."  Complaint, Ex. 1, ¶
9  3.

10

11 *Whether Default Was Due to Excusable Neglect*

12     Usually, a court will ask whether the failure to answer is due to excusable neglect. *See*
13 *Eitel*, 782 F.2d at 1472 (noting that the fact that the parties were engaged in settlement
14 negotiations excused defendant from failing to answer).  In the instant case, Ductos was
15 properly served with the Summons and Complaint on August 18, 2005, was mailed the
16 Motion for Entry of Default on November 16, 2005, was mailed the Motion for Default
17 Judgment on December 6, 2005, and was mailed the Renewed Motion for Default Judgment
18 on May 21, 2007. Given these circumstances, it is unlikely that Ductos' failure to answer and
19 the resulting default was a result of excusable neglect. *Cf. Shanghai Automation Instrument*
20 *Co. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D.Cal. 2001) (concluding no excusable neglect
21 because defendants "were properly served with the Complaint, the notice of entry of default,
22 as well as the papers in support of the instant motion").

23

24 *Policy Underlying Federal Rules of Civil Procedure*

25     Generally, default judgments are disfavored because "cases should be decided upon
26 their merits whenever reasonably possible."  *Eitel*, 782 F.2d at 1472.  However, because a
27 discretionary standard is applied, "default judgments are more often granted than denied."
28 *Pepsico v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D.Cal. 1999).  El Paso submitted the

1  invoice to Ductos prior to the initiation of this lawsuit and has specifically pled facts
2  supporting its claim; therefore, the policy encouraging decisions of cases on their merits does
3  not weigh against granting default judgment here. *See Elektra Entertainment Group Inc.*,
4  2004 WL 783123, at *5 (stating that "the mere existence of Fed.R.Civ.P. 55(b) indicates that
5  [this factor] is not alone dispositive" given the impossibility of deciding a case on the merits
6  when the defendant fails to respond).

*Summary*

Based on all the *Eitel* factors discussed above, the Court finds that El Paso's Motion for Default Judgment should be granted.

*Damages*

Having determined that the Motion for Default Judgment should be granted, the Court now turns to the matter of damages. El Paso seeks $1,028,684.41 in general damages, attorneys' fees and costs, and post-judgment interest thereon at the rate of ten percent (10%) per annum until paid in full.

*Breach of Contract Damages*

El Paso seeks payment of $1,578,684.41, minus the $550,000 mitigation, for the completion of the constructed facilities. The requested amount is supported by an itemized statement of costs. Motion for Default Judgment, Ex. B. The Agreement and itemized statement of costs constitute sufficient proof that El Paso has sustained damages for the breach of contract in the amount of $1,028,684.41.

*Pre-Judgment Interest*

The Court notes that the Motion for Default Judgment does not specifically request pre-judgment interest. However, the Complaint requests interest and the proposed form of order includes an award for prejudgment interest.

- 7 -

In its proposed form of order, El Paso has requested pre-judgment interest at the rate of 10% per annum. However, the Agreement provides that the "AGREEMENT SHALL BE INTERPRETED UNDER THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO ITS CONFLICTS OF LAWS PROVISIONS." Complaint, Ex. 1, ¶ 14. Therefore, Texas law applies to a determination of pre-judgment interest. Morever, even if the Court were to consider conflicts of laws provisions, Texas law provides that "[j]udgment interest rates are a matter of substantive law[.]" *Bergstrom A.F.B. Fed. Credit v. Mellon Mortgage*, 674 S.W.2d 845, 851 (Tex.App.--Tyler 1984, writ ref'd n.r.e.). The Court, therefore, will apply Texas law in its determination of pre-judgment interest.

Damages awarded for breach of contract bear prejudgment interest. *Adams v. H & H Meat Products, Inc.*, 41 S.W.3d 762, 780 (Tex.App.-Corpus Christi 2001, no pet.). "Prejudgment interest is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between accrual of the claim and the date of judgment." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex.1998). Plaintiffs in contract disputes have been permitted to recover prejudgment interest on both liquidated and unliquidated claims. *See Preston Farm & Ranch Supply, Inc. v. Bio-zyme Enterprises.*, 625 S.W.2d 295, 298-99 (Tex.1981) (applying rate set by contract as rate for prejudgment interest). In *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480, 485 (Tex.1978), the Texas Supreme Court recognized two separate bases for the award of prejudgment interest: (1) an enabling statute; and (2) general principles of equity. However, statutory prejudgment interest applies only to judgments in wrongful death, personal injury, property damage, and condemnation cases. Tex. Fin.Code Ann. §§ 304.102, 304.201; *Johnson & Higgins of Texas, Inc. v. Kenneco Energy*, 962 S.W.2d 507, 530 (Tex. 1998).

El Paso is entitled to recover pre-judgment interest based on the breach of contract claim against Ductos. *See Adams*, 41 S.W.3d at 780. Any award of prejudgment interest is governed by the common law rather than by any statute. *Kenneco Energy*, 962 S.W.2d at 530; *Adams*, 41 S.W.3d at 780. Based on Texas law, where no enabling statute applies

- 8 -

1  "prejudgment interest in a breach-of-contract action is properly awarded pursuant to section
2  304.003 of the Finance Code." *ExxonMobil Corp. v. Valence Operating Co.*, 174 S.W.3d
3  303 (Tex.App.-Houston 2005).

4  Tex.Fin.Code § 304.003(c)(1) provides that the postjudgment interest rate is "the
5  prime rate as published by the Board of Governors of the Federal Reserve System on the date
6  of computation." The Consumer Credit Commission is to determine that rate of interest.
7  Tex.Fin.Code § 304.003(b). The current judgment rate of interest is 8.25%. *See*,
8  http://www.occc.state.tx.us/pages/int_rates/Index.html. Accordingly, El Paso is entitled to
9  pre-judgment interest at the rate of 8.25 per cent per annum.

10  The Court notes that "[p]rejudgment interest is computed as simple interest and does
11  not compound." *Qwest Communications International, Inc. v. AT&T Corp.*, 114 S.W.3d 15,
12  38 (Tex.App.-Austin 2003), *reversed on other grounds*. Moreover, pre-judgment interest
13  begins to accrue on "the earlier of (1) 180 days after the date a defendant receives written
14  notice of a claim or (2) the date suit is filed." *Ellis v. City of Dallas*, 111 S.W.3d 161, 168
15  (Tex.App.-Houston 2003). *Kenneco Energy*, 962 S.W.2d 507, 5312005 WL 1252326
16  (Tex.Sup.Ct. 2005).

17  El Paso mailed an invoice to Ductos on February 26, 2003. Pre-judgment interest
18  begins to accrue, therefore, on August 25, 2003. Simple interest of 8.25% on $1,028,684.41
19  for 3 years, 9 months is $318,249.21. The Court, therefore, will award $318,249.21 in pre-
20  judgment interest to El Paso.

21

22  *Post-Judgment Interest*

23  "A judgment for money damages for breach of contract also bears interest from the
24  date of the judgment until it is paid." *Adams*, 41 S.W.2d at 780. Again, the rate is governed
25  by Tex.Fin.Code § 304.003. The Court finds El Paso is entitled to post-judgment interest at
26  the rate of 8.25 per cent per annum.

27
28

*Attorneys' Fees and Costs*

El Paso requests an award of attorneys' fees and costs. In its original motion for default judgment, El Paso requested an award of attorneys' fees and costs in the amount of $4,254.56. In its renewed motion for default judgment, El Paso asserts that it has incurred $97,419.39 in attorneys' fees and costs and requests a reasonable sum for the services performed in connection with this matter, together with interest at the rate of 10 % per anuum from the date judgment is entered until paid in full. The Court finds an award of $6,521.33[2] to be reasonable.

Furthermore, El Paso has requested an award of costs. Fed.R.Civ.P. 54(d) provides: "Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs." The discretion granted by Rule 54(d) is "solely a power to decline to tax, as costs, the items enumerated in [28 U.S.C.] § 1920." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 107 S.Ct. 2494, 2498 (1987). Section 1920 "defines the term 'costs' as used in Rule 54(d)" and "enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d)." *Id.* at 2497.

Under Rule 54(d), the prevailing party is entitled to costs unless the court rules otherwise. *Chavez v. Tempe Union High School Dist. # 213*, 565 F.2d 1087, 1095 (9th Cir.1977). A trial court must state reasons for the denial of costs so that the appellate court will be able to determine whether or not the trial court abused its discretion. *Subscription Television, Inc. v. Southern Cal. Theatre Owners Ass'n*, 576 F.2d 230, 234 (1978). The Court finds the requested award of $711.75[3] in costs to be appropriate. El Paso's request for attorneys' fees and costs will be granted.

---

[2]See Exhibit A.

[3]See Exhibit B.

- 10 -

*Rule 54(b), Fed.R.Civ.P.*

The Court "may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Rule 54(b), Fed.R.Civ.P. El Paso, Cumming, and Cumming Gas have submitted a stipulated judgment. The Court finds there is no just reason for delay of the default judgment.

Accordingly, IT IS ORDERED:

1. El Paso's Renewed Motion for Default Judgment [Doc. # 82] is GRANTED;

2. Granting judgment in favor of El Paso and against Ductos;

3. Awarding El Paso compensatory damages in the amount of $1,028,684.41 against Ductos;

4. Awarding El Paso pre-judgment interest in the amount of $318,249.21 against Ductos;

5. Awarding El Paso its reasonable attorneys' fees and costs in the amount of $7233.08;

6. Therefore, El Paso is awarded judgment against Ductos in the amount of $1,354,166.70, plus post-judgment interest thereon at the rate of 8.25 per cent per annum from the date judgment is entered until paid in full, and;

7. The Clerk of the Court shall enter judgment in favor of El Paso and against Ductos.

DATED this 31st day of May, 2007.

_____
Cindy K. Jorgenson
United States District Judge

# EXHIBIT A

| | | |
|---|---|---|
| Attorneys' fees as set forth in the original motion for default judgment: | | $ 3662.70 |
| 11/28/05 | | $ 780.30 |
| 11/28/05 | | $ 114.75 |
| 12/5/05 | | $ 28.90 |
| 12/6/05 | | $ 43.35 |
| 1/30/06 | | $ 43.35 |
| 2/7/06 | 20% of $ 72.25 | $ 14.45 |
| 4/5/06 | 60% of $ 72.25 | $ 43.35 |
| 4/29/06 | | $ 231.20 |
| 5/1/06 | | $ 76.50 |
| 5/9/06 | 56% of $ 520.20 | $ 291.31 |
| 5/10/06 | 14% of $ 722.50 | $ 101.15 |
| 5/15/06 | 20% of $ 361.25 | $ 72.25 |
| 5/16/06 | 5% of $ 910.35 | $ 45.52 |
| 5/23/06 | | $ 38.25 |
| 5/10/07 | | $ 17.00 |
| 5/10/07 | | $ 45.00 |
| 5/11/07 | | $ 17.00 |
| 5/14/07 | | $ 34.00 |
| 5/15/07 | | $ 90.00 |
| 5/16/07 | | $ 85.00 |
| 5/17/07 | | $ 510.00 |
| 5/21/07 | | $ 136.00 |
| TOTAL ATTORNEYS' FEES | | $ 6521.33 |

# EXHIBIT B

| | |
|---|---|
| Costs as set forth in the original motion for default judgment: | $ 631.86 |
| 4/30/06 | $  18.69 |
| 5/4/06 | $  55.30 |
| 5/16/06 | $   2.40 |
| 5/17/06 | $   3.50 |
| TOTAL COSTS | $ 711.75 |